[Cite as *State v. Howard*, 2024-Ohio-5785.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-698 |
| v. | : | (C.P.C. No. 23CR-5360) |
| Joseph Howard, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 10, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee.

**On brief:** *Mitchell A. Williams*, Public Defender, and *Leon J. Sinoff*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Joseph Howard, appeals from the October 31, 2023 judgment of the Franklin County Court of Common Pleas, denying him pretrial bail pursuant to R.C. 2937.222. Because we find the state proved by clear and convincing evidence that bail should be denied in this case, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2} On October 17, 2023, a Franklin County Grand Jury returned an 11-count indictment charging Mr. Howard with, among other offenses, one count of aggravated murder, four counts of murder, one count of attempted murder, and one count of aggravated robbery. All eleven offenses were indicted with firearm specifications and pertained to the September 13, 2023 shooting outside of a Columbus, Ohio bar that resulted in the death of two people and gunshot wound injuries to another.

{¶ 3}   In advance of Mr. Howard's scheduled arraignment, plaintiff-appellee, the State of Ohio, filed a motion requesting Mr. Howard be held without bail pursuant to R.C. 2937.222.  At his October 20, 2023 arraignment, Mr. Howard appeared and entered a plea of not guilty to all 11 counts.  Thereafter, the trial court detained Mr. Howard without bail pending a hearing on the state's denial-of-bail motion.

{¶ 4}   The trial court held a denial-of-bail hearing on October 26, 2023.  In support of its motion to hold Mr. Howard without bail pending trial, the state presented testimony from Columbus Police Department Detective Arthur Hughes about his investigation of the September 13, 2023 shooting, evidence gathered through that investigation, and the factual basis for the offenses charged in the indictment.

{¶ 5}   At the hearing, Detective Hughes testified about video surveillance footage obtained from the bar where the shooting occurred.  It showed Mr. Howard's sister, T.M., and another woman, T.C., engaged in a physical altercation outside of a bar at 11:27 p.m. on September 13, 2023 in the presence of Mr. Howard and three other men, including D.B. and M.F.  (*See* Oct. 26, 2023 Tr. at 7-10, 23; Ex. 1.)  After T.C. pinned T.M. to the ground and began punching her, Mr. Howard kicked T.C. several times in the head while M.F. unsuccessfully attempted to pull T.C. off of T.M.  (*See* Tr. at 8; Ex. 1.)

{¶ 6}   Mr. Howard then pulled a gun out of his waistband and fired multiple rounds at the two women and towards the outside wall of the bar, ultimately striking T.C., T.M., and D.B. (who was not involved in the fight but happened to be standing nearby).  (*See* Tr. at 8-9, 17-19; Ex. 1.)  Although the video surveillance footage did not have audio, Detective Hughes acknowledged receiving information about Mr. Howard shouting at T.C. to get off of his sister before firing shots at her.  (*See* Tr. at 23-24.)  Based on his review of the video surveillance footage and the live round of ammunition recovered at the scene, Detective Hughes surmised Mr. Howard's gun jammed while he was shooting.  (*See* Tr. at 9-10, 18; Ex. 1.)  After ejecting the jammed round, Mr. Howard shot T.C. once more at close range in the head.  (Tr. at 9-10; Ex. 1.)  He then ran after M.F., took M.F.'s cellphone at gunpoint, and fled the scene.  (*See* Tr. at 10, 18; Ex. 1.)

{¶ 7}   T.C. died at the scene and T.M. was pronounced dead at the hospital.  (*See* Tr. at 6.)  D.B. survived his gunshot wound injuries following surgery.  (*See* Tr. at 6-7.) Although Detective Hughes testified that police recovered two weapons in the nearby area—

one in an alley and the other either within or right outside of the bar—nothing in the record suggests either was the weapon Mr. Howard used that night.  (*See* Tr. at 21-22.)

{¶ 8}    After Mr. Howard's mother identified him in a still frame of the surveillance footage from the shooting, Detective Hughes filed charges and obtained a warrant for Mr. Howard's arrest.  (*See* Tr. at 10-13.)  Detective Hughes testified that cell site location information evidence and latent prints pulled from the hood of a car Mr. Howard can be seen touching on the surveillance video during the September 13, 2023 altercation further confirmed Mr. Howard's presence at the scene.  (*See* Tr. at 12-14.)  Additionally, M.F. identified Mr. Howard as the shooter when shown a photo array by the police.  (*See* Tr. at 18.)

{¶ 9}    Approximately two weeks after the shooting, law enforcement arrested Mr. Howard at a relative's home in Florida and he was extradited back to Ohio.  (*See* Tr. at 12.)  It is unclear from the record before us whether any firearms were seized from Mr. Howard at the time of his arrest.

{¶ 10}  At the conclusion of the October 26, 2023 hearing, the trial court announced its decision to grant the state's motion and deny Mr. Howard bail while awaiting trial pursuant to R.C. 2937.222.  (Tr. at 34-37.)  The trial court entered its judgment reflecting that denial on October 31, 2023.  Mr. Howard now brings a timely interlocutory appeal of that judgment and asserts the following sole assignment of error for our review:

> THE TRIAL COURT ABUSED ITS DISCRETION AND WRONGLY DENIED [MR. HOWARD] HIS CONSTITUTIONAL RIGHT TO BAIL WHEN IT DENIED BAIL WITHOUT CLEAR AND CONVINCING EVIDENCE, AS REQUIRED BY R.C. 2937.222(B), THAT [MR. HOWARD] POSED A SUBSTANTIAL RISK OF CAUSING FUTURE SERIOUS PHYSICAL HARM TO A PERSON OR THE COMMUNITY AND THAT NO RELEASE CONDITIONS WOULD REASONABLY ASSURE THE COMMUNITY'S SAFETY.

## II. ANALYSIS

{¶ 11}  In his sole assignment of error, Mr. Howard argues the trial court erred by denying him bail while awaiting trial. We disagree.

**A. Standard of Review**

{¶ 12} At the outset, we recognize that Ohio's appellate courts are divided on the appropriate standard of review in cases involving a trial court's denial of bail[1] under R.C. 2937.222. *See, e.g.*, *State v. Torres-Mesa*, 10th Dist. No. 23AP-98, 2023-Ohio-4397, ¶ 18, fn. 2; *State v. De La Cruz*, 10th Dist. No. 21AP-516, 2022-Ohio-4293, ¶ 10, fn. 6; *State v. Greenawalt*, 3d Dist. No. 9-22-43, 2023-Ohio-50, ¶ 10; *State v. Dearth*, 4th Dist. No. 23CA2, 2023-Ohio-968, ¶ 28-33.

{¶ 13} Notwithstanding the division among Ohio's appellate courts on this issue, the doctrine of stare decisis dictates that we review the trial court's denial of bail in this case for an abuse of discretion. *See State v. Foster*, 10th Dist. No. 08AP-523, 2008-Ohio-3525, ¶ 6 ("[T]he trial court's order [denying bail under R.C. 2937.222] will not be reversed absent a showing that the trial court abused its discretion in finding that the prosecution had met its burden of proof to show that appellant should be denied bail."). *See also State v. Burney*, 10th Dist. No. 14AP-354, 2014-Ohio-2622, ¶ 6; *State v. Henderson*, 10th Dist. No. 16AP-870, 2017-Ohio-2678, ¶ 5; *De La Cruz* at ¶ 10; *Torres-Mesa* at ¶ 18.

{¶ 14} "[A]buse of discretion connotes that the court's attitude is unreasonable, arbitrary, or unconscionable." (Internal quotations omitted.) *State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A decision is unreasonable if there is no sound reasoning process that would support the decision." (Internal quotations omitted.) *Fernando v. Fernando*, 10th Dist. No. 16AP-788, 2017-Ohio-9323, ¶ 7, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). A decision is arbitrary if it is made "without consideration of or regard for facts [or] circumstances." (Internal quotations omitted.) *State v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed.2014). A decision may also be arbitrary if it lacks any adequate determining principle and is not governed by any fixed rules or standards. *See id.*, citing *Dayton ex rel. Scandrick v. McGee*,

---

[1] We note that, for the purposes of this decision, the terms "bail" and "bond" are used interchangeably and without distinction. Indeed, although R.C. 2937.222 exclusively refers to "bail," case law applying this statute synonymously uses both terms. Moreover, both the parties and the court below likewise use both terms without distinction.

67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* 96 (5th Ed.1979). *See also State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, ¶ 19. A decision is unconscionable if it "affronts the sense of justice, decency, or reasonableness." *Fernando* at ¶ 7, citing *Porter, Wright, Morris & Arthur, LLP v. Frutta Del Mondo, Ltd.*, 10th Dist. No. 08AP-69, 2008-Ohio-3567, ¶ 11. An abuse of discretion may also be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.). *See also New Asian Super Mkt. v. Jiahe Weng*, 10th Dist. No. 17AP-207, 2018-Ohio-1248, ¶ 16. On purely legal questions, we apply de novo review. *New Asian Super Mkt.* at ¶ 16.

**{¶ 15}** Thus, while the standard is deferential, we are to consider whether the trial court improperly applied the governing law, used an erroneous legal standard, relied upon clearly erroneous findings of fact, or lacked a sound reasoning process in its ruling. *See, e.g.*, *Bellamy v. Montgomery*, 10th Dist. No. 11AP-1059, 2012-Ohio-4304, ¶ 7; *Trent v. Taylor*, 10th Dist. No. 17AP-89, 2017-Ohio-7189, ¶ 34.

## B. Legal Standards

**{¶ 16}** The Ohio Constitution mandates that "[a]ll persons shall be bailable by sufficient sureties, except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community." Ohio Constitution, Article I, Section 9. It also requires the Ohio General Assembly to set standards by law to determine whether that exception applies in a particular case. *Id.* Those standards are set forth in R.C. 2937.222. *See DuBose v. McGuffey*, 168 Ohio St.3d 1, 2022-Ohio-8, ¶ 21; *State v. Dickey*, 1st Dist. No. C-220536, 2023-Ohio-705, ¶ 8.

**{¶ 17}** Under R.C. 2937.222, a trial court may deny bail to a person accused of a criminal offense involving certain serious felonies—including first-degree or second-degree felony offenses—after holding a hearing and making certain findings. R.C. 2937.222(A). On appeal, Mr. Howard does not dispute that his criminal charges meet the statutory criteria for his detention and a denial-of-bail hearing under R.C. 2937.222(A). Instead, Mr. Howard argues the evidence presented at the hearing on the state's denial-of-bail motion

was insufficient to support the trial court's findings under R.C. 2937.222(B). Thus, to address his contention, we review R.C. 2937.222(B).

{¶ 18} A trial court cannot deny bail to a person awaiting trial unless it finds the state established, by clear and convincing evidence, *all three* of the following factors:

1. [T]he proof is evident or the presumption great that the accused committed the [serious felonies] with which [he] is charged.

2. [T]he accused poses a substantial risk of serious physical harm to any person or to the community.

3. [N]o release conditions will reasonably assure the safety of that person and the community.

*See Dickey* at ¶ 8, quoting R.C. 2937.222(B), and citing *State v. Murray*, 1st Dist. No. C-220243, 2022-Ohio-3411, ¶ 20.

{¶ 19} The standard of "clear and convincing evidence" is defined as " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See also Foster*, 2008-Ohio-3525 at ¶ 6; *Dickey* at ¶ 10.

{¶ 20} The state bears the burden of proving each of the three statutory factors set forth in R.C. 2937.222(B). *See* R.C. 2937.222(A).

{¶ 21} The rules of evidence "do not apply to the presentation and consideration of information at the [denial-of-bail] hearing." R.C. 2937.222(A). Thus, in determining whether the evidence presented by the state supports the denial of pretrial bail under R.C. 2937.222, a trial court need not consider whether such evidence would be admissible at trial.

**C. Analysis**

{¶ 22} Initially, we note that Mr. Howard does not take issue with the trial court's findings as to R.C. 2937.222(B)'s first factor—whether "the proof is evident or the presumption great that the accused committed [the charged] offense[s]." And, on review, we conclude the state's evidence was clearly and convincingly sufficient to support such finding. Detective Hughes testified about the police department's investigation of the

September 13, 2023 shooting and summarized the evidence supporting Mr. Howard's guilt as to the charged offenses. Most notably, this evidence included the video surveillance footage capturing the incident that was played for the trial court at the denial-of-bail hearing.

{¶ 23} Mr. Howard instead contends on appeal that the state failed to present clear and convincing evidence showing that (1) he poses a substantial risk of serious physical harm to any person or the community, and (2) no release conditions will reasonably assure the safety of the community at large, as required by R.C. 2937.222(B). Thus, he argues the trial court abused its discretion in denying him pretrial bond.

{¶ 24} In determining whether the accused "poses a substantial risk of serious physical harm to any person or to the community" and, if so, "whether there are conditions of release that will reasonably assure the safety of that person and the community," R.C. 2937.222(C) requires a trial court to consider additional information. Specifically, the trial court must consider "all available information" regarding the following:

   1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

   2) The weight of the evidence against the accused;

   3) The history and characteristics of the accused, including, but not limited to, both of the following:

      a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;

      b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.

      4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

R.C. 2937.222(C).

{¶ 25} It is undisputed Mr. Howard was 19 years old at the time of the shooting, had no prior criminal history, is a lifetime resident of Columbus, Ohio, owned a lawn-care business, and has family ties in the community. (*See* Tr. at 24-25, 27, 30-33.) Detective Hughes also acknowledged during the hearing that Mr. Howard was arrested in Florida without incident and waived his right to an extradition hearing. (*See* Tr. at 25, 27.)

{¶ 26} In support of R.C. 2937.222(B)'s second factor—whether Mr. Howard posed a "substantial risk of serious physical harm to any person or to the community"—the trial prosecutor emphasized the violent nature of the charged offenses and the weight of the evidence against Mr. Howard. (*See* Tr. at 29-30.) Specifically, the trial prosecutor argued the evidence showed Mr. Howard did not just shoot and kill the person he intended to harm (T.C.) while attempting to help his sister. (*See* Tr. at 23-24, 29-30; Ex. 1.) Rather, he so indiscriminately fired multiple rounds towards a group of people that he struck and killed his sister (T.M.), caused D.B. to sustain multiple gunshot wound injuries, and then proceeded to take M.F.'s cellphone at gunpoint. (*See* Tr. at 29-30. *See generally* Ex. 1.) The state contended that Mr. Howard's "conduct that night shows that he is, in fact, at risk of hurting somebody in our community if he's out on bond." (Tr. at 30.) Mr. Howard's trial counsel argued the circumstances of the charged offenses "are unlikely to be recreated and thus do not support a serious risk, a substantial risk to the community at large" because the state's own presentation of the case suggested Mr. Howard's actions were "motivated by defense of others." (Tr. at 32-33.) Defense counsel also noted the state presented no evidence to suggest Mr. Howard posed any danger to any particular person if released on bond. (*See* Tr. at 33.)

{¶ 27} Regarding R.C. 2937.222(B)'s third factor, the trial prosecutor contended that because Mr. Howard's "conduct that night shows that he is, in fact, at risk of hurting somebody in our community if he's out on bond," "there's really no condition you can place on him that would ensure the safety of the community in this case." (Tr. at 30.) In response, defense counsel argued the state presented "no evidence" to support this factor and reiterated it was "not requesting a low bail amount" but, instead, "simply asking that the

Court provide Mr. Howard with his constitutional right to some bail, some number that this Court considers reasonable given the circumstances of this case." (Tr. at 33-34.)

{¶ 28} Following the arguments of counsel, the trial court pronounced its ruling from the bench at the hearing. (Tr. at 34-37.) In explaining its basis for finding the state proved by clear and convincing evidence that bail should be denied in this case, the trial court stated as follows:

> In reviewing the -- or in looking at the video that was presented, it was not a situation, at least based upon the information that the Court has considered today -- and who knows, there may be additional evidence at a later date whereby the Court would reconsider -- but it looks like from the video that the defendant executed [T.C.]; that he had time to reconsider what was happening and what was going on after he shot his sister as well as having shot [T.C.]. But given the time to even consider doing something different [due to his firearm malfunctioning], he clearly got his gun in working condition and then immediately walked up to [T.C.] and finished the job that he had intended initially.
>
> The Court obviously has **some concerns** with regard to whether or not the defendant has the capacity[,] if back out in the community as a 19-year old with a weapon[,] [of] **posing a threat of danger** to any other persons and/or to the community, the Court finds that that threat would be significant.
>
> The Court also in consideration of its decision also is placing weight on the fact that the defendant did flee the jurisdiction, did flee to another state, which would still be available to him if he were out in the community.
>
> Fortunately, law enforcement was able to get information that would allow law enforcement to locate him and bring him back here. Who knows if that would be the case if he were able to obtain bond and be released.
>
> So the Court does find by clear and convincing evidence those factors that the Court needs to consider in denying bond.
>
> While the Court has considered the history and characteristics of the accused, there has been evidence presented that the defendant does not have any criminal history, and at least there's nothing to indicate that he has previously engaged in criminal behavior or conduct. But the Court finds that the other

> factors [in R.C. 2937.222(C)] outweigh any of those factors present with regard to the history and characteristics of the accused.

(Emphasis added.) (Tr. at 35-37.)

{¶ 29} Although Detective Hughes indicated two discarded "weapons" were recovered in the area on the night of the incident, it is unclear whether either of these weapons was the firearm used by Mr. Howard that night. (*See* Tr. at 21-22.) In any event, nothing in the record before us suggests Mr. Howard would have access to firearms if released on bond pending trial. *Compare Torres-Mesa*, 2023-Ohio-4397 at ¶ 26 (finding the detective's testimony about the "alarming number" and type of firearms believed to still be in Franklin County that were not recovered by law enforcement officers during execution of search warrant, in conjunction with the "scale of the drug trafficking operation" as "sufficient to establish, by clear and convincing evidence, that [the defendant] posed a substantial risk of serious physical harm to the community").

{¶ 30} It goes without saying that firearms always pose an inherent risk of harm to the community. But, as defense counsel noted, R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." (*See* Tr. at 33.) And, it is well-established in Ohio that "[a]n inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in [by the trier of fact]." *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph one of the syllabus. For this reason, "[a] finding of substantial risk may not be based on an inference upon an inference in order to transform a speculative risk into a substantial risk." (Internal quotations and citations omitted.) *State v. Hartley*, 194 Ohio App.3d 486, 2011-Ohio-2530, ¶ 27 (1st Dist.).

{¶ 31} Based on these principles, the trial court's oral pronouncement of its concerns about Mr. Howard posing "a threat of danger" in the event he could access a weapon was not sufficient for what R.C. 2937.222(B) requires. (*See* Tr. at 36.) Nonetheless, in its written entry memorializing its decision to grant the state's motion to deny Mr. Howard pretrial bond, the trial court applied the appropriate standard to the evidence presented when analyzing R.C. 2937.222(B) second denial-of-bail factor:

> The Court finds by clear and convincing evidence that the accused poses a substantial risk of serious physical harm to any person or to the community by shooting in a public place a gun multiple times with little regard for the number of persons present. He was so reckless in shooting his gun that he shot and killed his own sister. He shot the other victim execution style in the head with no regard for her life. He fired the gun so thoughtlessly that he injured a bystander.

(Oct. 31, 2023 Entry at 3.) As such, on review of the record, we cannot say the trial court abused its discretion in finding the state's evidence clearly and convincingly estbalished that Mr. Howard posed a substantial risk of serious physical harm to the community.

{¶ 32} R.C. 2937.222(B)'s third factor required the trial court to consider whether, if the accused posed a substantial risk of serious physical harm to any person or the community, the state proved "by clear and convincing evidence that no release conditions will reasonably assure the safety of that person and the community." At the hearing, the state generally asserted that, given Mr. Howard's conduct on the night of the shooting, "there's really no condition you can place on him that would ensure the safety of the community in this case." (Tr. at 30.)

{¶ 33} In analyzing this factor, the trial court found the state's evidence about Mr. Howard fleeing to Florida after the shooting suggested he was a flight risk—a general bond consideration in all criminal cases, *see* R.C. 2937.011—combined with his "little regard for anyone's life when he started shooting" amounted to clear and convincing evidence that no release conditions could reasonably assure the safety of the community. (*See* Oct. 31, 2023 Entry at 3; Tr. at 36-37.) However, as the Supreme Court of Ohio has recently recognized, flight risk concerns "can be addressed by other means, such as a daily reporting requirement to a probation officer and electronic monitoring." *DuBose*, 2022-Ohio-8 at ¶ 32, *overruled on other grounds by constitutional amendment*. The trial court did not explicitly address the viability of any specific pretrial bond conditions such as electronic monitoring, house arrest, a daily report requirement, a mental health assessment, or regular drug and alcohol screenings.

{¶ 34} To best assure compliance with R.C. 2937.222 and safeguard against any potential violations of a defendant's constitutional right to pretrial bail, it would be prudent for trial courts to consider pretrial bond conditions and explain why they do not believe such conditions would reasonably assure safety to a particular person or the community

before denying pretrial bond. *See, e.g., State v. S.D.D.*, 10th Dist. No. 23AP-171, 2023-Ohio-4040, ¶ 24-29 (reversing trial court's decision to deny a defendant pretrial bail for failure to properly engage with statutory factors); *State v. Jackson*, 8th Dist. No. 110621, 2021-Ohio-4320, ¶ 44-51 (finding trial court's judgment denying pretrial bond violated defendant's constitutional guarantee where the trial court's findings of fact were not supported by the record).

{¶ 35} In any event, we find clear and convincing evidence in the record by which the trial court in this case could have found that no release conditions would reasonably assure the safety of the community if Mr. Howard were released on bond while awaiting trial. The evidence presented at the denial-of-bail hearing showed Mr. Howard recklessly shot his firearm multiple times towards a group of people, striking three people despite only apparently intending to harm one. Although Mr. Howard had a moment to reconsider his actions when his firearm jammed, he instead ejected the misfired live round, shot the intended victim in the head at close range, threatened another man at gunpoint and took his cellphone, and then fled the state. Notwithstanding the absence of any prior criminal history and Mr. Howard's ties to Central Ohio, these actions show Mr. Howard's reckless disregard for human life and the law, and thus, are clear and convincing proof that he is a danger to the community. *See* R.C. 2937.222(C).

{¶ 36} For these reasons, we conclude the trial court did not abuse its discretion when it ordered Mr. Howard be held without bail pending trial in this case. As such, Mr. Howard's sole assignment of error is overruled.

## III. CONCLUSION

{¶ 37} Having overruled Mr. Howard's sole assignment of error, we affirm the October 31, 2023 judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J. and LUPER SCHUSTER, J., concur.

————————